UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RED STAG ENGINEERING AND
AUTOMATION, INC.,

        Plaintiff,

v.                                   Case No. 07-C-224

ELITE MANUFACTURING
TECHNOLOGIES, INC.,

        Defendant.

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION TO TRANSFER**

Plaintiff Red Stag Engineering and Automation, Inc. ("Red Stag"), commenced this action for breach of contract against Elite Manufacturing Technologies, Inc. ("Elite") in the Circuit Court for Waupaca County, Wisconsin, on January 11, 2007. Elite removed the case to this court based upon diversity of citizenship, 28 U.S.C. § 1332. The matter is presently before the court on Elite's motion to transfer venue to the Northern District of Illinois, where an action in which Elite alleges that Red Stag breached the same contract is presently pending. For the reasons that follow, Elite's motion will be granted.

**BACKGROUND**

Elite is an Illinois corporation principally located in Bloomingdale, Illinois and is engaged in the business of manufacturing precision sheet metal fabricated products for direct sale to customers in various industries. In order to continue supplying its then-largest customer with

welded cabinets of a sufficient quality and reduced cost to retain its customer's business, Elite entered into negotiations with Red Stag, a Wisconsin corporation, to purchase automated robotic welding equipment. Red Stag was to acquire the welding equipment from another manufacturer and then customize it with software and services to meet Elite's needs. Face-to-face negotiations over the project occurred in Elite's Bloomingdale, Illinois plant in fall of 2005. During a November 22, 2005 meeting at Elite's Illinois facility, Elite provided Red Stag with a sample demonstrating the requisite welding quality of the cabinets Elite needed the equipment to produce in order to meet its customer's needs.

On or about December 12, 2005, Elite advised Red Stag via email that it would agree to purchase the equipment for $150,940.00 subject to two conditions: (1) the equipment must produce cabinets of the same quality as the sample provided to Red Stag.; and (2) the equipment must more than double Elite's hourly cabinet production. On December 20, 2005, Elite further advised Red Stag via email that delivery of the equipment must be made to Elite by the end of January, 2006. Later that day, Red Stag transmitted an email to Elite accepting the terms of Elite's emails dated December 12, 2005 and December 20, 2005, respectively. Elite thereafter transmitted to Red Stag a purchase order for the equipment and paid Red Stag $22,641 as an advance deposit on the purchase price. The balance in the purchase price was to be paid after delivery and installation of the equipment.

Red Stag failed to deliver the equipment by the end of January, 2006. Between January 27, 2006 and September 5, 2006, Red Stag advised Elite of numerous delays in the production of the equipment, but continued to promise the equipment would be ready for delivery within a matter of days. On at least four occasions, Red Stag's representatives traveled to Bloomingdale, Illinois to

2

provide Elite with updates on its progress and to show Elite samples of the cabinets produced by the equipment. Elite alleges that the cabinets provided by Red Stag during these visits failed to satisfy the quality standards set forth in the agreement. When Elite still had not received the equipment by September 20, 2006, Elite cancelled the purchase order and demanded the return of its deposit. Elite advised Red Stag that it intended to initiate legal proceedings to recover the deposit as well its consequential damages.

In an effort to resolve the dispute, the parties engaged in settlement discussions over the ensuing months. On January 11, 2007, while they were still negotiating, Red Stag commenced this action in the Circuit Court for Waupaca County. Red Stag alleges that despite the fact that it "performed and completed or substantially completed all of its obligations under the contract, Elite notified Red Stag in September 2006 that it wished to cancel the parties' agreement without making any further payment." (Compl. ¶ 10.) Red Stag did not give Elite notice of its suit at that time, however. Settlement discussions ceased by February of 2007 and on February 9, 2007, Elite filed its lawsuit for breach of contract against Red Stag in the Circuit Court for Cook County, Illinois. Elite effected personal service on Red Stag's registered agent in Wisconsin four days later on February 13, 2007. On February 16, 2007, three days after Red Stag was served with Elite's lawsuit, Elite's registered agent was personally served with a copy of the summons and complaint in this action. It was then that Elite first learned of Red Stag's earlier filing. On March 14, 2007, Red Stag removed Elite's action to the District Court for the Northern District of Illinois where the matter is presently pending before the Honorable John F. Grady. At a March 28 hearing on Red Stag's motion to transfer the Illinois action to this court, Judge Grady indicated that he would hold the motion in abeyance and defer to this court's determination as to the most convenient forum.

3

## ANALYSIS

When two lawsuits over the same or similar subject matter are filed in two federal district courts, "there is a presumption that subject to the principles that govern requests for transfer to a more convenient forum, the first case should be allowed to proceed and the second should be abated." *Asset Allocation and Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th Cir.1989). The presumption is not conclusive, however. The Seventh Circuit has "never adhered to a rigid 'first to file' rule." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir.1987). To do so would simply encourage "an unseemly race to the courthouse." *Id.* Thus, "priority in time will not be enforced where the first-filed action is seen as an 'improper anticipatory filing'-that is, a filing made under threat of an imminent suit and asserting the mirror image of that suit in another district. *Barrington Group, Ltd. v. Genesys Software Systems, Inc.*, 239 F.Supp.2d 870, 873 (E.D.Wis.2003).

As noted above, the presumption in favor of the first-filed lawsuit is also subject to the principles governing transfer to a more convenient forum that apply even when no action is presently pending in another district. A district court may transfer a civil action to any other district or division where it might have been brought if it is convenient for the parties and witnesses and if transfer is in the interest of justice. 28 U.S.C. § 1404(a). The party seeking transfer has the burden of establishing that the transferee forum is "clearly" the more convenient forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir.1986). In assessing whether a party seeking a transfer has met this burden, the Court must examine factors relating to both convenience and the interests of justice. Five factors bear on this question: (1) the plaintiff's choice of forum, (2) the locations of the material events, (3) the relative ease of access to sources of proof, (4) the

convenience of the parties, and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill.2000).

In this case, Elite argues that the court should afford no deference to Red Stag's choice of forum because its commencement of this lawsuit in Waupaca County was an improper anticipatory filing that is excepted from the first-to-file rule. (Mem. In Supp. Of Mot. To Transfer at 7.) In support of its argument that its filing was anticipatory, Elite contends that Red Stag waited more than 35 days and only served it with the summons and complaint after Elite commenced its action and served Red Stag. Citing *Champion Labs, Inc. v. Burch*, 2006 WL 3370174, *2 (S.D. Ill Nov. 21, 2006), and *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp.2d 733 (E.D. Penn. 2005), Elite argues that a suit is considered anticipatory where the party who first files a complaint waits to serve the opposing party until after the opposing party filed and served its own complaint. (Mem. In Supp. at 7.) Red Stag, on the other hand, denies that it waited until it was served with the summons and complaint in Elite's lawsuit before it attempted to serve Elite with its own. It has submitted an affidavit which shows that the summons and complaint were sent to an Illinois process server on January 30, 2006, and that attempts to serve Elite's registered agent on February 13, 14, and 15 were unsuccessful. The fact that Elite was not served until February 16, Red Stag contends, was thus due to the unavailability of its registered agent and not any intent by Red Stag to delay notice of its lawsuit. (Pl.'s Resp. at 3.)

Although not convinced that Red Stag "promptly" sought to serve Elite with its lawsuit, the court is unwilling to conclude on this record that Red Stag acted improperly in filing suit as negotiations between the parties were breaking down. Nevertheless, given the closeness in time in which the two lawsuits were filed and the fact that Elite had no notice that Red Stag had already

5

commenced a lawsuit at the time it filed its own, the court declines to place much weight on the fact that Red Stag's suit was filed first. Instead, the court will look to all of the circumstances to determine which venue is most convenient to the parties and witnesses and will best serve the interests of justice.

Based on the submissions by the parties on this issue, the court concludes that the Northern District of Illinois is more convenient than Green Bay. The vast majority of witnesses likely to testify in this case reside much closer to the Chicago area where the United States District Court for the Northern District of Illinois sits than Green Bay. More specifically, it is clear that the individuals at Elite who are knowledgeable about the contract and who would testify as to the impact of Red Stag's failure to deliver in a timely manner had on Elite's business reside in the Northern District of Illinois. Third party witnesses likely to testify at trial also reside closer to the Northern District of Illinois. WMS Gaming, Inc., the principal customer Elite alleges it lost as a result of Red Stag's delay in providing the equipment, is located in Waukegan, Illinois, and Motoman, Inc, the entity Red Stag represented would supply the principal component of the equipment it was to customize to meet Elite's needs, is located in Ohio, significantly closer to Chicago than Green Bay.

Even the witnesses that Red Stag indicates that it intends to call as witnesses reside closer to the Chicago area than Green Bay. The affidavit submitted by Red Stag in support of its motion to transfer the case to Wisconsin reflects that the bulk of the work that was expended in performance of the contract was done in the Milwaukee metropolitan area. Although Red Stag's principal offices are located in Waupaca, Red Stag notes that it utilizes independent contractors in its business and used six contractors located around the Milwaukee metropolitan area in connection

6

with the work performed for Elite. (Aff. of Paul Pfundtner, ¶ 4.) Red Stag also leases a warehouse in Milwaukee where it maintains its equipment and performs services necessary to its business. (*Id.* ¶ 5.) Indeed, according to Red Stag, all of the employees and vendors used on the Elite project reside in the Milwaukee area. (*Id.* ¶ *14.*) Milwaukee is closer to the Chicago area than to Green Bay.[1] Thus, even Red Stag's own witnesses would suffer little or no inconvenience by holding the trial in Illinois. In addition, the physical evidence in the form of the sample cabinets Red Stag tendered to Elite are stored in the Chicago area. Since Elite's rejection of the quality of workmanship on the cabinets is a material issue in the case, this fact also supports Elite's position that the most convenient forum is Illinois.

Finally, I note that Judge Grady has expressed a willingness to accept transfer of the case, and the statistical information concerning time between filing and disposition of cases in the two districts suggests the case may more quickly be resolved in the Northern District of Illinois. Transfer would thus also serve the interest of the parties in having a prompt resolution of the matter. For all of these reasons, the court concludes that Elite's motion for a transfer this case to the Northern District of Illinois for consolidation with Elite Manufacturing Technologies, Inc. v. Red Stag Engineering and Automation, Inc., Case No. 07 C 1442, should be **GRANTED**.

**SO ORDERED** this     11th     day of May, 2007.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

---

[1] This case was originally assigned to Judge Stadtmueller in the Milwaukee Division of the Eastern District of Wisconsin, but Judge Stadtmueller transferred the case to the Green Bay Division presumably because Red Stag's principal offices are located within this Division.

7